## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SHAMINI PARAMESWARAN, M.D.** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiff,** | : | **3:22-cv-00271 (   )** |
| | : | |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY,** | : | |
| **YALE-NEW HAVEN HEALTH** | : | |
| **SERVICES CORPORATION d/b/a** | : | |
| **YALE-NEW HAVEN HEALTH** | : | |
| **SYSTEMS, and YALE-NEW HAVEN** | : | |
| **HOSPITAL,** | : | **FEBRUARY 16, 2022** |
| **Defendants.** | : | |
| | : | |

## COMPLAINT

### I.    INTRODUCTION

1.      Dr. Shamini Parameswaran was born in London, England and raised in Lubbock, Texas. She studied Biomedical Engineering at John Hopkins University and graduate studies in Microbiology at Texas Tech University before attending medical school at Texas Tech University Health Services Center. Dr. Parameswaran was one of two candidates accepted into the inaugural class of Yale University's Integrated Six-Year Cardiothoracic surgical Residency Program ("the Program").

2.      Dr. Parameswaran began her training in July 2014 and excelled, advancing on schedule through the first five years of the Program. Then, she was met with sex discrimination, and everything changed.

3.      In 2018, during the latter part of Dr. Parameswaran's residency, male fellows were given priority to surgical cases over her, depriving her of the intense operative experience needed in the latter part of her training.

4.      When Dr. Parameswaran was assigned to cases, the male fellows scrubbed in, instructed her to move over, and took over the case. Their discriminatory actions, which were witnessed and allowed by attendings, forced Dr. Parameswaran out of those critical and necessary operative experiences.

5.      Dr. Parameswaran complained about the preferential treatment of male fellows and sex discrimination to the Program Director, Dr. Frank Detterbeck, human resources, the Title IX Coordinator, and others. No remedial action was taken.

6.      Instead, only after her protected complaints of sex discrimination, Dr. Parameswaran's abilities as a medical resident were called into question. She was disciplined, placed on a remediation plan, and academic probation. Her training was extended, thereby denying her timely graduation, sitting for boards, licensing, and credentialing.

7.      The defendants' retaliation of Dr. Parameswaran will follow her for the rest of her career as a cardiothoracic surgeon. It has and will continue to cause significant damages during the remainder of Dr. Parameswaran's career.

8.      Dr. Detterbeck is and at all relevant times was an agent of all Defendants in this case, and the Defendants' collective inequitable treatment of Dr. Parameswaran demonstrates bias against Dr. Parameswaran the basis of her sex.

9.      Accordingly, Dr. Parameswaran brings claims for sex discrimination, retaliation and for aiding and abetting discrimination, in violation of in violation of Title VII of the Civil Rights Act of 1964; the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60; and Title IX of the Education Amendments of 1972.

10.     Dr. Parameswaran demands a jury trial on all claims so triable.

## II.    JURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the events or omissions giving rise to the asserted claims occurred herein.

13.    This Court has supplemental jurisdiction over the plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal law claims.

## III.    PARTIES

14.    Plaintiff, Shamini Parameswaran currently resides in Lubbock, Texas.  At all times relevant to this action, the plaintiff resided in New Haven, Connecticut.

15.    Dr. Parameswaran is female.

16.    At all times discussed herein, all defendants were aware of Dr. Parameswaran's sex.

17.    Defendant Yale University ("Yale" or "the University") is a non-profit educational institution located in New Haven, Connecticut.

18.    At all relevant times discussed herein, Yale was Dr. Parameswaran's employer within the meaning of the Title VII and CFEPA.

19.    Yale employs more than 15 employees.

20.    Yale is an education program or activity that receives federal financial assistance within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

21.    Defendant Yale-New Haven Health Services Corporation does business as Yale-New Haven Health Systems ("YNHHS").  It is a conglomerate of non-profit healthcare institutions with its headquarters in New Haven, Connecticut.

22.     At all relevant times discussed herein, YNHHS was Dr. Parameswaran's employer within the meaning of the Title VII and CFEPA.

23.     YNHHS employs more than 15 employees.

24.     Defendant Yale-New Haven Hospital ("YNHH" or "the Hospital") is a non-profit healthcare institution located in New Haven, Connecticut.

25.     At all times discussed herein, YNHH was Dr. Parameswaran's employer within the meaning of the Title VII and CFEPA.

26.     YNHH employs more than 15 employees.

27.     YNHH is a subsidiary of YNHHS.

28.     YNHHS exercises control over the actions of YNHH.

29.     At all relevant times discussed herein, Yale, YNHHS, and YNHH were Dr. Parameswaran's single and/or joint employer within the meaning of the Title VII, Title IX, and CFEPA.

30.     Alternatively, at all relevant times discussed herein, YNHHS and YNHH were third parties that aided, abetted, and/or facilitated the actions of Dr. Parameswaran's employer, Yale University.

## IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

31.     Dr. Parameswaran filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging sex discrimination and retaliation.  The complaints were dual filed with the federal Equal Employment Opportunity Commission ("EEOC").

32.     The CHRO complaints were filed in a timely manner insofar as they were filed within 180 days of the defendants' last discriminatory and retaliatory acts against plaintiff.

33.     Dr. Parameswaran received a Release of Jurisdiction from the CHRO, dated November 19, 2021, and a Notice of Right to Sue from the EEOC, dated January 14, 2022, for defendant Yale University.

34.     Dr. Parameswaran received a Release of Jurisdiction from the CHRO, dated November 19, 2021, and a Notice of Right to Sue from the EEOC, dated January 14, 2022, for defendant Yale-New Haven Health Services Corporation.

35.     Dr. Parameswaran received a Release of Jurisdiction from the CHRO, dated November 19, 2021, and a Notice of Right to Sue from the EEOC, dated January 14, 2022, for defendant Yale-New Haven Hospital.

36.     Dr. Parameswaran filed this Complaint within 90 days of his receipt of the agencies' releases of jurisdiction.

## IV.     STATEMENT OF FACTS

### A.  Dr. Parameswaran Excels in Yale's I-6 Program and Is Slated for an On-Time Graduation as the Program's First Graduate.

37.      From July 2014 to December 2020, Dr. Parameswaran was a Resident in the Integrated Six-Year Cardiothoracic Surgical Residency Program ("the Program").

38.     The Program includes both a cardiovascular surgery track and a general thoracic surgery track, both of which provide focused training. The Program is six (6) years – PGY1 to PGY6. At the conclusion of the PGY6 year, residents are board-eligible in cardiothoracic surgery by the American Board of Thoracic Surgery (ABTS).

39.     The last two years of the program (PGY5 and PGY6) consist of intense operative experiences in both cardiac and general thoracic surgery, while meeting case requirements for certification by ABTS.

5

40.     There are only 33 thoracic surgery integrated programs accredited through the Accreditation Council for Graduate Medical Education (ACGME) in the United States.

41.     Dr. Parameswaran was part of the inaugural class in Yale's Program.

42.     For most of Dr. Parameswaran's training, and for all relevant times herein, the Program Director was Dr. Frank Detterbeck.

43.     From July 2014 to March 2019, the Program did not criticize Dr. Parameswaran's performance based on professionalism or medical knowledge. There was no indication of inadequate performance.

44.     Dr. Parameswaran was promoted as scheduled from PGY1 to PGY5.

45.     From approximately June 2018 to June 2019, Dr. Parameswaran was a PGY5.

46.     From July 1, 2019, to June 30, 2020, Dr. Parameswaran was the Chief Resident, consistent with the Program requiring residents to assume administrative responsibilities during their last two years of training.

47.     Dr. Parameswaran expected to be promoted to PGY6 in June 2019, and graduate on-time from the Program in June 2020.

**B. Defendants Yale, YNHH and/or YNHHS Create and Perpetuate a Discriminatory Work Environment During Dr. Parameswaran's Tenure as a Surgical Resident.**

48.     During Dr. Parameswaran's PGY5 year, two male trainees were in the Thoracic Surgery Fellowship, an alternative track for general surgery residency graduates to become board-eligible in cardiothoracic surgery.  PGY5 and PGY6 trainees in the Program have equivalent training levels to trainees in the Thoracic Surgery Fellowship.

49.     During PGY5 though, in the latter part of 2018, the two male fellows were given priority to surgical cases over Dr. Parameswaran, depriving her of the intense operative experience needed in the latter part of her training. When Dr. Parameswaran was assigned to

6

cases, the male fellows scrubbed in, instructed Dr. Parameswaran to move over and took over the case. This discriminatory behavior was, at a minimum, allowed by male attending surgeons, Yale, YNHHS, and/or YNHH.

50.     This practice happened consistently, irrespective of case complexity, and despite the positive feedback Dr. Parameswaran routinely received on her technical skills.

51.     More alarming, fellows, regardless of their training levels, do not scrub in with one another. There was no technical or policy-based reason for a fellow to scrub in on Dr. Parameswaran's surgical cases on a routine basis.

52.     From July to October 2018, Dr. Parameswaran complained of sex discrimination to Dr. Detterbeck and Dr. Arnar Geirrson, Chief of Cardiac Surgery.  Despite several complaints, no corrective action was taken.

53.     In November and December 2018, Dr. Parameswaran elevated her complaints of sex discrimination to Merle Waxman, Associate Dean of Women in Medicine, Ombudsperson, and Yale's Title IX Coordinator.

54.     Dr. Parameswaran also complained and consulted with Dr. Rosemary Fisher, former Associate Dean of Graduate Medical Education. Dr. Parameswaran informed Dr. Fisher that she was contemplating writing to the ACGME about the sex discrimination and lack of meaningful remedial action.

55.     On December 13, 2018, a meeting was held with Dr. Parameswaran, Ms. Waxman, Drs. Fisher, Detterbeck, Geirsson, Dr. Stephen Huot, Associate Dean and Director of Graduate Medicine Education, and Dr. Walter Longo, Director of Surgical Education.

56.     Dr. Parameswaran raised concerns about her trajectory in the Program because of sex discrimination as a result of male fellows being given priority in the OR.

57.     At no time during this meeting, did anyone state, directly or indirectly, that there were any competency deficiencies that were precluding Dr. Parameswaran's advancement to PGY6, or raise any concerns about her performance or professionalism.

58.     On January 8, 2019, Dr. Parameswaran's mid-year ACGME milestones demonstrated appropriate growth since her promotion to PGY5, meaning she was slated for an on-time advancement to PGY6.

**C.  Defendants Repeatedly Retaliate Against Dr. Parameswaran After Her Protected Complaints of Sex Discrimination.**

59.     After her protected complaints, on April 4, 2019, Drs. Detterbeck and Geirrson presented Dr. Parameswaran with a remediation plan to repeat her PGY5 year due to alleged deficiencies in professionalism, medical knowledge, and patient care. At no time prior to her protected complaints of sex discrimination did anyone at Yale, YNHH, and/or YNHHS tell Dr. Parameswaran that she had any competency deficiencies.

60.     Repeating PGY5 postponed Dr. Parameswaran's anticipated graduation date by one year, to June 2021. This retaliatory and punitive action would delay Dr. Parameswaran sitting for her boards, obtaining medical licensing, and entering the workforce. Remediation plans are disciplinary and are required to be disclosed when obtaining licensing, applying for jobs, and more.

61.     Dr. Detterbeck failed to follow the Progressive Discipline Steps in Yale New Haven Medical Center Policy # II.012, seemingly ignoring the disciplinary steps before a remediation plan is administered.

62.     On May 1, 2019, Dr. Parameswaran filed a grievance in response to the remediation plan, alleging discrimination and retaliation.

8

63.     Traditionally, the YNHH grievance procedures could be initiated based on discrimination.

64.     On April 3, 2019, one day before Dr. Parameswaran was provided a copy of the proposed remediation plan, Drs. Huot and/or Detterbeck seemingly unilaterally changed the grievance procedure to remove an employee's ability to bring a grievance based on discrimination.

65.     This change in policy was not raised or discussed during the March or April Yale New Haven Medical Center Graduate Medical Education Committee meetings.

66.     On May 6, 2019, Dr. Parameswaran filed a complaint with human resources, once again citing discrimination and retaliation in the Program that led to the remediation plan.

67.     On May 28, 2019, Dr. Parameswaran's grievance was denied.

68.     On June 6, 2019, Dr. Parameswaran filed a second step grievance.

69.     Yale, YNHHS, and/or YNHH hired an independent investigator regarding Dr. Parameswaran's complaints of discrimination and retaliation. The investigation concluded that Yale, YNHHS, and/or YNHH did not follow the progressive discipline policy and the Grievance Panel did not follow the applicable policy when deciding Dr. Parameswaran's grievance.

70.     Although the investigation did not find discrimination or retaliation, it concluded there were significant process and fairness issues relating to enforcement, or lack thereof, of policies, and not having consistent documentation to support the serious action of remediation and an additional year of residency.

71.     The retaliation continued. On September 4, 2019, while Dr. Parameswaran's second step grievance was still pending, Yale, YNHHS, and/or YNHH issued her a written

warning for alleged "unprofessional behavior," and gave her a second remediation plan based on medical knowledge, patient care, and professionalism.

72.     Not surprisingly, on September 5, 2019, Dr. Parameswaran's second step grievance was denied.   Yale, YNHHS and/or YNHH made it clear that if Dr. Parameswaran continued to complain about sex discrimination or retaliation, she was never going to graduate the Program.

73.     Dr. Parameswaran stopped complaining, continued to work extremely hard, and was promoted early to PGY6 on January 1, 2020.

74.     At that time, Dr. Parameswaran's anticipated graduation date changed again to December 2020.   Unfortunately, even after Dr. Parameswaran's promotion to PGY6, unfair and unlawful treatment based on her sex continued.

75.     In January 2020, Yale, YNHHS, and/or YNHH released a rotation schedule that placed Dr. Parameswaran at the Veterans Association Hospital in West Haven, where she was operating about three times or less per week, a far cry from the "intense operative experience" expected of a PGY6.   At the York Street campus, where most Residents in their last of year of training are placed, she would have been operating daily.

76.     Dr. Geirsson, Dr. Abeel Mangi, Dr. Prashanth Vallabhajosyula, Associate Program Director, and Dr. John Elefteriades separately indicated to Dr. Parameswaran that her service on the VA rotation was inappropriate for a PGY6 resident. They agreed that she should be operating daily at York Street but were clear that the decision was Dr. Detterbeck's and "he likes being in control." Dr. Elefteriades went as far as to say Dr. Parameswaran's move to the VA rotation was punitive.

77.     In early March 2020, Dr. Parameswaran complained that the rotation schedule favored male residents, or was done in retaliation for her earlier complaints, and about Dr. George Tellides' conduct at the VA Hospital. Defendants completed an investigation into Dr. Parameswaran's complaints and, not surprisingly, found no wrongdoing.

78.     Three weeks later, and only after Dr. Parameswaran's complaints about him, Dr. Tellides submitted a scathing evaluation of Dr. Parameswaran's skills, saying he would not let her assist in the care of him or a family member, and opining that Dr. Parameswaran was not on an adequate trajectory for promotion.

**D. The Discrimination and Retaliation Continue. Defendants Place Dr. Parameswaran on Academic Probation Weeks After Her Request to Be Treated the Same as a Similarly Situated Male Resident in the Program.**

79.     In or around mid-2020, Dr. Parameswaran learned that as a result of the remediation plan she could not sit for the board examination for the ABTS in December 2020 if she did not graduate from the Program before August 2020.

80.     The process for board certification is lengthy. Registration is in August of each year. The written exam follows in December, the oral exam is the following October. Notification of board certification takes place the next January. If Dr. Parameswaran did not graduate close to on-time, and could not sit for the Boards in December 2020, she would be precluded from starting the certification process for more than a year.

81.     During Summer 2020, Dr. Parameswaran was discussing employment opportunities with multiple hospitals.  Each opportunity required credentialing and obtaining a medical license in the requisite state, and each preferred pending board certification at the time of hire. Board certification is only pending after an applicant registers to take the boards.

11

82. In June 2020, Dr. Parameswaran reached out to Dr. Detterbeck to determine if she could graduate from the Program close to on-time and before registration for the boards closed in August 2020. Dr. Detterbeck responded that he "support[ed]" Dr. Parameswaran's decision to take the boards in December and he was "so pleased to see the in-service results from March." Ultimately, though, he denied her request.

83. For a similarly situated male resident, though, Dr. Detterbeck granted a similar request. The similarly situated male resident in the Program was promoted retroactively to allow him to graduate close to on time, even though there were significant concerns about his ability to successfully complete the Program.

84. This male trainee repeated his PGY4 year three times. As of May 2020, the male trainee was doubtful that he would be promoted to PGY5 because of consistent deficiencies in his performance.

85. Instead, Dr. Detterbeck promoted the male trainee from a PGY4 to a PGY6, thereby skipping his PGY5 year, allowing him to graduate close to-on time, and to have access to fellowship applications immediately to pursue a non-surgical career in intensive care without delay.

86. Yale, YNHHS, and/or YNHH's promotion of this male trainee was consistent with information they reported to the ACGME Accreditation Data System which, in February 2020, showed one PGY5 and one PGY6 (Dr. Parameswaran).

87. As of July 2020, the same system showed one PGY5, but three PGY6's, showing an additional resident advancing to PGY6 without completing PGY5.

88.     Dr. Parameswaran sought to be treated equally to this male trainee by being allowed to graduate close to on time, so her career was not delayed by Yale, YNHHS, and/or YNHH's discrimination and retaliation.

89.     At the time of her request, Dr. Parameswaran had completed all requirements and pre-requisites for graduation, and scored above average on the In-Training Examination for all graduating PGY6 candidates nationwide.

90.     The ABTS's Residency Requirement states, "Candidates for certification must complete a minimum of 24 months of residency training in thoracic and cardiovascular surgery in a program accredited by the ACGME's Review Committee on Thoracic Surgery. This must include 12 months of continuous senior-level responsibility in their last year of training in the institutions of the residency program. These requirements also pertain to the 6-year integrated residency programs."   Dr. Parameswaran met these requirements and completed significantly more case requirements than are required by ACGME guidelines.

91.     Dr. Parameswaran was Chief Resident of Cardiothoracic Surgery from July 1, 2019, to June 30, 2020, consistent with her ACGME profile showing she was in her 6th Resident Year during the 2019-2020 academic year.

92.     Dr. Parameswaran completed more than the required 12 months as a PGY6 with continuous senior level responsibility.

93.     On July 6, 2020, Dr. Parameswaran's counsel reached out to defendants' lawyers about this issue and again requested that Yale treat her the same as the similarly situated male trainee by retroactively promoting her to PGY6 and graduating her immediately, thereby meeting the pre-requisites of the ABTS to sit for the December 2020 boards.

94.     Yale, YNHHS, and/or YNHH was informed of at least one pending job opportunity and the significant damage to Dr. Parameswaran's career if her graduation was delayed and she was not able to sit for the boards in December.

95.     Again, Yale, YNHHS, and/or YNHH denied Dr. Parameswaran request on July 22, 2020, and she was unable to sit for the boards in December 2020.

96.     Dr. Parameswaran would not have pending board certification until she completed registration in August 2021.

97.     Days after Yale, YNHHS, and/or YNHH's denial to treat Dr. Parameswaran the same as a similarly situated male trainee, on July 27, Dr. Detterbeck raised alleged "professionalism" concerns with her.

98.     Dr. Parameswaran responded to his concerns verbally and in writing, even providing documentary evidence to show the professionalism concerns were without merit.   Dr. Detterbeck placed Dr. Parameswaran on administrative leave on August 1, 2020.

99.     On August 25, Yale, YNHHS, and/or YNHH placed Dr. Parameswaran on academic probation for the remainder of her time with the Program for alleged "significant deficiencies in the core competency of professionalism."

100.    These allegations were demonstrably false, and this action came only after her renewed complaints of sex discrimination and differential treatment on the basis of sex.

101.    Because of Dr. Parameswaran's placement on academic probation, she no longer had an anticipated graduation date, thereby precluding her from looking for jobs or applying for licensing in any state.

102.    Academic probation is discipline. Yale, YNHHS, and/or YNHH's placement of Dr. Parameswaran on academic probation required her to truthfully disclose this disciplinary

action on all credentialing and licensing applications, at a minimum, extending the period of time for approval, and potentially precluding her from approval all together.

103.    Dr. Parameswaran graduated from the Program in December 2020.

104.    Yale, YNHHS, and/or YNHH gave her less than 30 days' notice of her graduation, again precluding her from applying for credentialing and licensing in any state.

105.    As a result of Yale, YNHHS, and/or YNHH discrimination and retaliation, Dr. Parameswaran was unemployed until July 2021, causing significant economic wages.

106.    Dr. Parameswaran's placement on academic probation will follow her the rest of her career.  She must disclose it on credentialing and licensing applications in any state she chooses to practice.

107.    As a result of Yale, YNHHS, and/or YNHH discrimination and retaliation, Dr. Parameswaran was forced to take a position where she is earning significantly less than she would have likely earned had she not been retaliatorily placed on academic probation.

## V.    **LEGAL CLAIMS**

**COUNT ONE:**
**SEX DISCRIMINATION,**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. §2000e *et seq*.**
**as to ALL DEFENDANTS**

108.    The plaintiff incorporates by reference all preceding allegations in this Complaint.

109.    Defendants discriminated against Dr. Parameswaran in the terms, conditions, and privileges of her employment because of her sex.

110.    Defendants' conduct in this regard was willful and/or in reckless disregard to Dr. Parameswaran's right to be free from discrimination.

111.    As a result of defendants' conduct, Dr. Parameswaran suffered damages.

**COUNT TWO:**
**SEX DISCRIMINATION,**
**IN VIOLATION OF THE CFEPA,**
**CONN. GEN. STAT. § 46a-60(b)(1)**
**as to ALL DEFENDANTS**

112.    The plaintiff incorporates by reference all preceding allegations in this Complaint.

113.    Dr. Parameswaran's sex was a motivating factor in defendants' decision to take one or more adverse employment actions against her.

114.    Defendants' unlawful conduct was committed willfully and with reckless disregard for Dr. Parameswaran's right to be free from discrimination.

115.    As a result of defendants' conduct, Dr. Parameswaran suffered damages.

**COUNT THREE:**
**IN THE ALTERNATIVE – AIDING AND/OR ABETTING DISCRIMINATION,**
**IN VIOLATION OF THE CFEPA**
**CONN. GEN. STAT. § 46a-60(b)(5),**
**as to YALE-NEW HAVEN HEALTH SERVICES CORPORATION**

116.    The Plaintiff incorporates by reference all preceding allegations in this Complaint.

117.    In the alternative, if Yale-New Haven Health Services Corporation was not Dr. Parameswaran's employer, then YNHHS aided, abetted, incited, compelled, and/or coerced one or more acts by Dr. Parameswaran's employer, Yale University, that constituted discriminatory employment practices, as defined by § 46a-60(b) of the Connecticut General Statutes.

118.    As a result of YNHHS's conduct, Dr. Parameswaran suffered damages.

## COUNT FOUR:
## IN THE ALTERNATIVE – AIDING AND/OR ABETTING DISCRIMINATION, IN VIOLATION OF THE CFEPA, CONN. GEN. STAT. § 46a-60(b)(5), as to YALE-NEW HAVEN HOSPITAL

119.    The Plaintiff incorporates by reference all preceding allegations in this Complaint.

120.    In the alternative, if Yale-New Haven Hospital was not Dr. Parameswaran's employer, then YNHH aided, abetted, incited, compelled, and/or coerced one or more acts by Dr. Parameswaran's employer, Yale University, that constituted discriminatory employment practices, as defined by § 46a-60(b) of the Connecticut General Statutes.

121.    As a result of YNHH's conduct, Dr. Parameswaran suffered damages.

## COUNT FIVE:
## RETALIATION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e *et seq*. as to ALL DEFENDANTS

122.    The Plaintiff incorporates by reference all preceding allegations in this Complaint.

123.    Defendants retaliated against Dr. Parameswaran because she opposed discrimination against her on the basis of her sex.

124.    Defendants' conduct in this regard was willful and/or in reckless disregard to Dr. Parameswaran's right to be free from retaliation.

125.    As a result of defendants' conduct, Dr. Parameswaran suffered damages.

**COUNT SIX:**
**RETALIATION,**
**IN VIOLATION OF THE CFEPA,**
**CONN. GEN. STAT. § 46a-60(b)(4),**
**as to ALL DEFENDANTS**

126.    The Plaintiff incorporates by reference all preceding allegations in this Complaint.

127.    Defendants retaliated against Dr. Parameswaran because she opposed discrimination against her on the basis of her sex.

128.    As a result of defendants' conduct, Dr. Parameswaran suffered damages.

**COUNT SEVEN:**
**HOSTILE WORK ENVIRONMENT, IN VIOLATION OF TITLE IX**
**OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681,**
**as to YALE UNIVERSITY**

129.    The plaintiff incorporates by reference all preceding allegations in this Complaint.

130.    Dr. Parameswaran sustained harassment because of her sex that was sufficiently severe or pervasive to alter the terms or conditions of her employment and create a hostile working environment.

131.    All acts that constituted and contributed to the hostile working environment were part of the same unlawful practice, and one or more acts contributing to the hostile working environment occurred within the statutory limitations period.

132.    Yale University had actual knowledge of the harassment sustained by Dr. Parameswaran and other female employees and students of Yale University.

133.    The harassment occurred in a context that was subject to Yale University's control and where Yale could have taken remedial action.

134.    As a result of Yale's discrimination, Dr. Parameswaran suffered damages.

**COUNT EIGHT:**
**DELIBERATE INDIFFERENCE, IN VIOLATION OF TITLE IX**
**OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681,**
**as to YALE UNIVERSITY**

135.    The plaintiff incorporates by reference all preceding allegations in this Complaint.

136.    Dr. Parameswaran sustained harassment because of her sex that was sufficiently severe or pervasive to alter the terms or conditions of her employment and create a hostile working environment.

137.    All acts that constituted and contributed to the hostile working environment were part of the same unlawful practice, and one or more acts contributing to the hostile working environment occurred within the statutory limitations period.

138.    Yale acted with deliberate indifference insofar as one or more officials at Yale with authority to address the sex discrimination against Dr. Parameswaran and to institute corrective measures had actual knowledge of the discrimination and failed to respond and/or responded in a clearly unreasonable fashion in light of the known circumstances.  Specifically, the official or officials did not take actions that were reasonably calculated to end the discrimination.

139.    As a result of Yale's deliberate indifference, Dr. Parameswaran suffered damages.

**COUNT NINE:**
**RETALIATION, IN VIOLATION OF TITLE IX**
**OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681,**
**as to YALE UNIVERSITY**

140.    The plaintiff incorporates by reference all preceding allegations in this Complaint.

141.    Dr. Parameswaran engaged in protected activity within the meaning of Title IX.

142.    Yale retaliated against Dr. Parameswaran because of her protected activity.

143.     The retaliation by Yale continued and amplified the hostile work environment to which Yale had been subjecting Dr. Parameswaran on the basis of her sex, insofar as it constituted part of a pattern of ongoing hostility and animus toward Dr. Parameswaran on that basis.

144.     The retaliation by Yale might well have dissuaded a reasonable person in the Dr. Parameswaran's position from making a charge of discrimination.

145.     As a result of Yale's retaliation, Dr. Parameswaran suffered damages.

* * *

**WHEREFORE,** Dr. Parameswaran's requests that this Court assume jurisdiction over this Complaint, enter judgment in his favor, and award her:

1. Economic damages;

2. Compensatory damages;

3. Liquidated damages;

4. Punitive damages;

5. Interest, pursuant to § 37-3a of the Connecticut General Statutes;

6. Declaration that the defendants' practices violated Title IX;

7. Reasonable attorney's fees and costs; and

8. Such other relief as may be just and equitable.

                                       **RESPECTFULLY SUBMITTED,**
                                       **THE PLAINTIFF,**

By:   _/s/ Amanda M. DeMatteis_
                            Amanda M. DeMatteis *(ct29413)*
                            Joshua R. Goodbaum *(ct28834)*
                            GARRISON, LEVIN-EPSTEIN
                                  FITZGERALD & PIRROTTI, P.C.
                            405 Orange Street
                            New Haven, CT  06511
                            Tel.: (203) 777-4425
                            Fax: (203) 776-3965
                            adematteis@garrisonlaw.com
                            jgoodbaum@garrisonlaw.com

**Please enter my appearance on behalf of the plaintiff in this matter.**